IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANSKO HOLDINGS, INC., **Plaintiff,** | CIVIL ACTION |
| v. | |
| BENEFIT TRUST COMPANY, **Defendant.** | NO. 16-324 |

DuBois, J.                                                                 November 21, 2017

**M E M O R A N D U M**

## I.     INTRODUCTION

This case involves a contract dispute arising out of a trust agreement between Benefit Trust Company ("BTC") and Dansko Holdings, Inc. ("Dansko"). BTC is a trustee services provider which Dansko selected as trustee for its employee stock ownership program ("ESOP"). *See S*econd Am. Compl., ¶ 4. Shortly after selecting BTC as trustee, Dansko sought to refinance its debt obligations. *Id*. at ¶ 5. Dansko alleges that BTC violated the terms of the trust agreement when it failed to provide trustee services for the refinancing transaction, causing Dansko to incur more than $2 million in damages. *Id.* at ¶¶ 9, 10. On September 27, 2016, Dansko filed its Second Amended Complaint asserting claims based on breach of contract, breach of oral contract, promissory estoppel, and fraud in the inducement. Second Am. Compl., ¶ 1. Presently before the Court is Dansko's Motion to Compel Production of Documents. Dansko's fraud in the inducement claim is the only claim relevant to the Motion.

With respect to the fraud in the inducement claim, Dansko alleges that BTC intentionally failed to disclose that it was under investigation by the Department of Labor ("DOL") at the time it entered into the trust agreement. *See* Pl.'s Mot. to Compel at ¶¶ 3–6. Dansko contends that if

BTC had disclosed that it was under investigation by the DOL, Dansko would have conducted further inquiry or declined to retain BTC. *See* Pl.'s Mot. to Compel at ¶ 10.

Dansko now moves to compel production by BTC of documents related to the DOL investigation. On June 5, 2017, the Court ordered BTC to provide copies of the documents at issue for *in camera* review. The documents consist of correspondence between BTC, its attorneys at Lathrop & Gage and The Groom Law Firm, its insurance broker, and its insurance company. Notably, in twenty of the twenty-seven documents provided by Dansko and reviewed by the Court, no attorney authored or received the correspondence.

In response to the motion, BTC claims that the documents Dansko seeks are not relevant because it concedes that it was under investigation by the DOL. BTC further asserts that the documents are protected by the attorney-client privilege or work product doctrine—even where there is no attorney involved—because the communications were created for the "purposes of obtaining and maintaining insurance coverage related to the DOL matter and communicating with the insurer regarding strategy and possible settlement . . . ." Def.'s Resp. to Pl.'s Mot. to Compel at 1.

It is Dansko's position that the attorney-client privilege and work product doctrine do not extend to communications which do not involve an attorney. Dansko also argues that the privilege is waived with respect to communications with a third-party insurance broker or carrier. Pl.'s Mot. to Compel at ¶ 16.

## II.     APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Two

privileges are relevant for purposes of this Motion—the attorney-client privilege and the work-product doctrine.

### A. Attorney-Client Privilege

Under Pennsylvania law, the attorney-client privilege protects "confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011).[1] To successfully invoke the protections of attorney-client privilege, a litigant must show: "(1) The asserted holder of the privilege is or sought to become a client[;] (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate[;] (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purposes of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort[; and] (4) The privilege has been claimed and is not waived by the client." *In re Flonase Antitrust Litigation*, 723 F.Supp.2d 761, 761 (E.D. Pa. 2010) (applying Pennsylvania law). The party asserting the privilege has the burden of showing that the doctrine applies. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. 112, 117

---

[1] Pennsylvania privilege law applies because Pennsylvania tort law governs the fraud in the inducement claim. *See* Fed. R. Civ. P. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861-62 (3d Cir. 1994) ("As the claims and defenses in issue in this action arise under state law, Federal Rules of Evidence 501 and 1101(c) provide that [the Court] should apply state law in determining the extent and scope of the attorney-client privilege.")). The parties make no argument regarding choice of law with respect to the attorney client privilege; however, the Court notes that the only law cited by the parties on this issue, *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271 (W.D. Pa. 2014), is a federal district court case applying, in relevant part, Pennsylvania attorney-client privilege law.

(E.D. Pa. 2011). However, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly. The privilege protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991) (internal citations omitted).

"Communications between attorney and client are not privileged if made in the presence of or communicated to third parties." *Barr Marine Products, Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979). Further, "[d]isclosing a communication to a third party unquestionably waives the privilege." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), *as amended* (Oct. 12, 2007). There are numerous exceptions and nuances to this general rule, one of which is relevant in this case.

Disclosures made to a third-party consultant do not constitute a waiver when the disclosure is "necessary for the client to obtain informed legal advice" or if the disclosure is made "to an 'agent' assisting the attorney in giving legal advice to the client." *Westinghouse*, 951 F.2d at 1424. Pennsylvania law recognizes that"[t]he protection of the attorney-client privilege involving communications regarding the availability of insurance can extend to those agents who are necessary to effectuating the representation [which] can include communications between an insured and an insurance carrier and their respective agents where the disclosures to the agents are in furtherance of the purpose of the privilege." *Serrano v. Chesapeake Appalachia, LLC.*, 298 F.R.D. 271, 282 (W.D. Pa. 2014) (citing *Levy v. Senate*, 34 A.3d 243, 254–55 (Pa. Commw. Ct. 2011), *aff'd in part and rev'd in part on other grounds*, 65 A.3d 361 (Pa. 2013). Accordingly, "[s]uch communications are within the privilege to the extent that they involve communications from the client to the carrier or the carrier to the client for the purpose

of obtaining legal representation and advice, effectuating the representation, and related matters such as options regarding strategy and settlement." *Id.*

   B.  **Work Product Doctrine**

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil Procedure. 26(b)(3)." *United Coal Cos.*, 839 F.2d at 966. A party may claim as privileged any documents that contain attorney work product—"tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). As the party claiming the work product doctrine in this case, defendants have the burden of establishing that it applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

The purpose of the work product doctrine is to "protect material prepared by an attorney acting for his client in anticipation of litigation." *In re Processed Egg Prod. Antitrust Litigation*, 278 F.R.D. at 119 (quoting *United States v. Rockwell Int'l*, 897, F.2d 1255, 1265 (3d Cir. 1990)). Despite this, "federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer." *United Coal Cos.*, 839 F2d. at 966; *see also Golden Trade, S.r.L. v. Jordache*, 143 F.R.D.508, at *6 (S.D.N.Y. Aug. 10, 1992) ("[D]ocuments may come within the scope of the work-product doctrine even if they do not reflect in any meaningful way the analysis of the attorney.")); *RR Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983) (holding that the defendant's correspondence with its insurer's that were

5

"written as a consequence of pending litigation for the purpose of mounting a defense to the claim" were trial preparation materials within the meaning of Rule 26(b)(3)).

The work product doctrine protects documents prepared in anticipation of litigation, rather than "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *U.S. v. Rockwell Intern*, 897 F.2d 1255, 1264 (3d Cir. 1990) (quoting *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). Several courts have noted the difficulty in determining whether documents prepared by an insurance company were prepared in anticipation of litigation or in the ordinary course of business, because an insurance company "has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured." *Lyvan v. Harleysville Ins. Co.*, No. 93-CV-6145, 1994 WL 533907, at *3 (E.D. Pa. Sep. 29, 1994); *see also Jet Plastica Industries, Inc. v. Goodson Polymers, Inc.*, No. 91-CV-3470, 1992 WL 10474, at * 2 (E.D. Pa. 1992) ("it is equally clear that Rule 26(b)(3) 'was not intended to protect all insurance claim files from discovery'") (quoting *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985)). The point at which an insurer's routine claim investigation shifts to anticipation of litigation depends on the facts of each case. *Lyvan*, 1994 WL 533907, at *4. Courts consider factors like "the nature of the documents, the nature of the litigation, the relationship between the parties and any other facts peculiar to the case." *Brown v. Nicholson*, No. 06-CV-5149, 2007 WL 1237931, at *2 (E.D. Pa. Apr. 25, 2007) (quoting *Lyvan*, 1994 WL 533907, at *3). "In addition, courts have considered the involvement of an attorney to be 'highly relevant, although not necessarily [the] controlling factor.'" *Id.*

## III. DISCUSSION

BTC submitted thirty entries from its privilege log for *in camera* review.[2] The Court first addresses the parties' arguments regarding the relevance of those documents. Next, the court addresses those documents over which BTC asserts only attorney-client privilege before turning to the remaining documents with respect to which it claims protection under both the attorney-client privilege and work product doctrine.

### A. Relevance

The Court must first determine whether the documents sought are relevant to Dansko's fraud in the inducement claim. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). BTC argues that the documents are not relevant because (1) the claim for fraud in the inducement fails as a matter of law; and (2) BTC concedes that the DOL investigation was, in fact, an investigation. Def.'s. Resp. to Pl. Mot. to Compel, at 2–3. The Court rejects these arguments.

With respect to BTC's first contention—that the claim for fraud in the inducement fails as a matter of law—the Court denied BTC's motion to dismiss on that issue. That issue will be addressed, if necessary, when the Court rules on any motions for summary judgment. Accordingly, the Court rejects this argument on the present state of the record.

The Court also rejects BTC's argument that its concession that the DOL investigation was in fact an investigation renders these communications irrelevant. "The elements of fraud in the inducement are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

---

[2] Of the thirty entries, four entries are duplicates.

7

misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Division*, 874 A.2d 1170, 1185 (Pa. Super. Ct. 2005). The fact that BTC now concedes that the DOL investigation was an investigation is insufficient to satisfy all of the elements of fraud in the inducement. Dansko must show not only that BTC falsely represented that it was not involved in a DOL investigation, but did so knowingly or recklessly and with the intent to mislead. BTC's characterization of the DOL Investigation in its communications with its insurers is certainly relevant to establishing the elements of fraud in the inducement. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

### B. Attorney-Client Privilege

In this case, the Court must determine whether communications between BTC and its insurance carrier and insurance broker are protected by the attorney-client privilege notwithstanding the fact that an attorney neither authored nor received the communications. This issue requires a discussion of the relationship between an insurance carrier and broker, an insured, and an attorney for an insured who is paid by the insurer.

In *Piro v. Bell*, 25 Pa. D. & C.3d 668, 671 (Pa. Com. Pl. 1981), the defendant argued for an expansion of the attorney-client privilege to permit the free flow of information between the insurance company, the insured, and the attorney, stating that "the insurance situation is unique because of the interlocking relationship between the attorney, the insured, and the insurance company." *Id.* Although the *Piro* court ultimately declined to extend the attorney-client privilege to the communication at issue because it occurred prior to the insured's retention of counsel, it noted that "the rationale of those cases upholding the privileged nature of

8

communications between an insured and insurer where the insurer is under an obligation to defend is more persuasive . . . ." *Id.* at 673 (quoting *People v. Ryan*, 197 N.E.2d 15, 17 (Ill. 1981)). Other Pennsylvania state cases extended the attorney-client privilege to insurance carriers on the grounds that "an anomalous relationship exists among the attorney, the insured, and the insurance company by virtue of the insurance contract . . . [where the] insurance policy requires the insurance company to defend the insured." *O'Brien v. Tuttle*, 21 Pa. D. & C.3d, 319 322 (Pa. Com. Pl. 1981) (relying on a theory of joint representation); *see also Smith v. St. Luke's Hosp.*, 40 Pa. D & C.3d 54, 57 (Pa. Com. Pl. 1984) (same).[3]

In *Serrano*, the court did not rely on a theory of joint representation, but instead concluded that Pennsylvania law extends the attorney-client privilege to agents who assist in facilitating the relationship between the attorney and the client. *See Serrano*, 298 F.R.D. at 282. Accordingly, that court concluded that "[c]ommunications between an insured and its carrier. . . . are within the privilege to the extent that they involve communications . . . [made] for the purpose of obtaining legal representation and advice, effectuating the representation, and related matters such as options regarding strategy and settlement." *Id.* at 283. With respect to communications involving the insurance carrier and broker, the *Serrano* court stated that the relevant question is whether the communications were made for the purpose of obtaining legal representation or advice. This Court agrees with the *Serrano* court that communications between an insured, an insurance carrier, and its broker, are privileged if the communications "are necessary to procure and/or provide the representation in a manner necessary to maintain the availability of coverage and/or effectuate strategy and tactics of counsel." *Id.*

---

[3] This Court previously declined to create a per se rule that indemnification by an insurance carrier creates a joint representation of the insured and the insurance carrier. *CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP*, 2013 WL 315716 (E.D.Pa. Jan. 28, 2016) (holding that a co-client relationship does not exist simply by virtue of the insurer-insured relationship).

a. Properly Withheld Documents

The Court first concludes that nineteen of the documents at issue were properly withheld: BTC privilege log entries 3, 4,[4] 6, 7,[5] 8, 9, 10,[6] 12, 13, 14, 18, 19, 20, 21, 26, 27, 28, 29, and 30. The Court first addresses Dansko's argument that communications between BTC, its attorneys, and SRA and XL Insurance cannot be protected because the parties' interests are not sufficiently aligned, before addressing each document in turn.

Dansko asserts that the withheld communications cannot be protected by attorney-client privilege because the provision of coverage was subject to a reservation of rights and thus the parties' interests are not sufficiently aligned. The Court rejects that argument. "In the insurance context, where a suit is brought by a third party against the insured, an anomalous relationship exists among the attorney, the insured, and the insurance company by virtue of the insurance contract." *O'Brien*, 21 Pa.D & C.3d, at 322. This is true even where an insurer's duty to indemnify is subject to a reservation of rights. *See Serrano*, 298 F.R.D. at 280 ("the potential for Patterson to have to indemnify the rig operator for its liability to plaintiff gives Patterson a sufficient nexus with the instant litigation."); *Eckman v. Erie Ins. Exchange*, 21 A.3d 1203, 1209 (PA. Super. 2011) (rejecting the argument that " 'any' attorney selected by Appellee to represent insureds under a reservation of rights has a conflict, suggesting . . . that any or all attorneys paid by an insurer would breach their ethical obligations to the insured/client . . . to frame claims as excluded from coverage").

---

[4] Privilege log entry number 4 is duplicated at privilege log entry number 25. BTC asserts protection under the attorney-client privilege with respect to entry number 4, but asserts protection under both the attorney client privilege and work product doctrine with respect to entry number 25. The Court addresses both the attorney-client privilege and the work product doctrine with respect to these entries.
[5] Privilege log entry number 7 is duplicated at privilege log entry number 26.
[6] Privilege log entry number 10 is duplicated at privilege log entry number 21.

The Court concludes that BTC privilege log entries 3, 6, 7, 12, 18, 29, and 30, were properly withheld under the attorney-client privilege because those entries consist of communications in which attorneys give, request, or are provided with information for the purpose of providing legal advice. Entry number 3 is an email from BTC's outside counsel Richard Bien of Lathrop & Gage to: BTC's president, Brad Scaffe; BTC's chief financial officer, Stacey Perry; and two representatives from BTC's insurance agent, Schifman Remley Associates ("SRA"), regarding an updated tolling agreement between the DOL and BTC. Entry numbers 6 and 7 consist of a string of emails addressed to Bien from both SRA and BTC executives that convey information regarding XL Insurance's reservation of rights and information related to the insurance policy in effect at the time of the claim. Similarly, entry number 12 is an email from Bien to SRA and BTC providing an update on the status of the investigation. Entry number 18 is an email from Perry to two attorneys at The Groom Law Firm, a firm BTC engaged as co-counsel with Lathrop & Gage, conveying information about the insurance policy in effect at the time of the DOL claim. Def.'s Resp. to Pl.'s Mot. to Compel at 8.[7] Entries number 29 and 30 consist of an email chain in which Scafe relays the substance of a telephone call with BTC's insurance carrier, XL Insurance, to SRA representatives, BTC employees, and Bien, to which an SRA representative responds. The Court finds that each of these emails was either drafted by an attorney or conveyed information to an attorney for the purpose of providing legal advice and is thus protected by attorney-client privilege.

The Court concludes that BTC's privilege log entry numbers 4, 8, 9, 10, 13, 14, 19, 20, 27, and 28 were properly withheld as precisely the type of communication that the *Serrano* court protects from disclosure. Several of the emails are communications regarding the initial

---

[7] BTC notes that it claimed privilege over this communication based on the attorney-client and insurer-insured privilege. The reference to insurer-insured communication on the privilege log was in error as no representatives from SRA or XL Insurance authored or received the email. *See* Def.'s Resp. to Mot. to Compel at 8 n.5.

notification of BTC's potential claim to the insurance carrier, while others involve information about the insurance policy as it related to settlement of the DOL claim.

Entry number 14 is an email communication in which Scafe asked SRA to notify XL Insurance of BTC's claim for coverage under its insurance policy and informed SRA of its intent to retain Bien as its attorney in the matter. SRA confirmed that it would submit the notice of the claim to XL Insurance with its email in entry number 28 and subsequently confirmed that it had indeed submitted the claim with its email in entry number 13. Subsequently, XL Insurance confirmed by the letter listed at entry number 10 "that there appeared to be coverage for issues raised by the DOL's . . . letter, acknowledged Rick Bien of Lathrop & Gage would be representing BTC in the matter, enclosed the insurer's billing guidelines, and asked that BTC forward all of Mr. Bien's invoices to it." Def.'s Mot. to Dismiss Pl.'s Sec. Am. Compl., Ex. 3, Decl. of Bradley Scafe ("Scafe Decl.") at ¶ 11. Entry number 9 is the insurer's email transmitting that letter to BTC and entry number 8 is an email in which BTC forwards the letter to SRA.

Entry number 4 is an email from Perry to representatives from both XL Insurance and SRA conveying settlement updates. Similarly, entry number 27 is an email from Perry to two SRA employees providing a settlement update, including information about the advice that BTC received from its attorneys with respect to a possible settlement of the DOL investigation. Entry number 20 is an email from an XL Insurance representative to an SRA that describes BTC's insurance policy coverage. The email was subsequently forwarded to Perry with instructions to review the email from XL Insurance at entry number 19. These two emails were then forwarded to attorneys at the Groom Law Firm to provide them with information necessary to determine a course of legal action. *See* P.L. Entry No. 18.

12

The Restatement (Third) of the Law Governing Lawyers states in relevant part that "the privilege covers communications by a client-insured to an insurance-company investigator who is to convey the facts to the client's lawyer designated by the insurer . . . in providing a progress report or discussing litigation strategy or settlement." *See Serrano*, 298 F.R.D. at 282–83 n.1, (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. f (2000)). The purpose of the attorney-client privilege is to foster communication between attorneys and their clients "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. at 117. Where an insurance carrier defends a corporation against a legal claim, the insurance carrier and broker are "agents who are necessary to effectuating the representation." *Serrano*, 298 F.R.D. at 282 (citing *Levy v. Senate*, 34 A.3d 243, 254–55 (Pa.Commw.Ct. 2011)). In this context then, an attorney's ability to give sound and informed advice will depend on the assessment of the claim and other information conveyed to the client by the insurance carrier and by the client to the insurance carrier. Because the communications addressed above were "necessary to procure and/or provide the representation in a manner necessary to maintain the availability of coverage and/or effectuate strategy and tactics of counsel in that setting fall within the attorney-client privilege," the Court concludes that they are protected by the attorney-client privilege. *Id.* at 283; *see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("the privilege exists to protect not only the giving of professional advice to those who act on it but also the giving of information to the lawyer to enable him to give sound and informed advice") (citations omitted); *Fed. Trade Comm'n v. Abbvie, Inc.*, No. 14-CV-5151, 2015 WL 8623076, at *3 (E.D.Pa. Dec. 14, 2015) ("Under the third-party consultant exception, disclosure does not waive the attorney-client privilege so long

as 'disclosure is necessary to further the goal of enabling the client to seek informed legal assistance.'") ( citations omitted)).

    b. <u>Improperly Withheld Documents</u>

The Court now turns to documents that BTC improperly withheld—2 , 15, 16, and 17—and concludes that BTC has not established that the communications were made for the purpose of securing legal advice.

Entries number 2, 15, 16, and 17,[8] are not protected by the attorney-client privilege because they relate to routine scheduling matters and do not involve an attorney. Entry number 2 is an email from an SRA representative to Scafe to set up a conference call. Similarly, entry number 15 is an email from an SRA representative to Scafe notifying him of a conference call with XL Insurance. And entry number 16 is an email from SRA to representatives from XL Insurance and BTC requesting updates for a telephone call. "A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D.Pa. 2005). BTC asserts the attorney-client privilege on the basis that this communication involves "Attorney Advice re DOL Investigation." P.L. at 1. The Court is not persuaded. Because these communications relate to scheduling telephone conferences and no attorney is named on the communications, BTC failed to provide evidence demonstrating that the purpose of the communication was to secure legal advice. *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Metropolitan Family Practice*, No. 03-CV-969, 2015 WL 3434000, at *15 (E.D.Pa. Dec. 12, 2005) (requiring disclosure of an email that contained only facts related to scheduling); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 594 (S.D.

---

[8] The Court notes that entry number 17 is a duplicate of entry numbers 15 and 16. For the same reasons, entry number 17 is not protected by the attorney-client privilege.

Fla. 2013) (nothing that communications related to "scheduling . . . were not communications made for the purpose of legal advice"); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 64 n.12 (S.D.N.Y. 2010) ("the fact that a conference call took place . . . is not privileged" where "the documents . . . reveal no underlying legal advice").

### C. Work Product Doctrine

Defendants also submitted four documents—22, 23, 24, and 25—over which they assert protection under both the work product doctrine and the attorney-client privilege. The Court first addresses whether those communications were properly withheld under the work product doctrine, before turning to the attorney-client privilege.

With respect to the work product doctrine, the Court must determine whether those communications were prepared in anticipation of litigation or in the regular course of business. *See Lyvan*, 1994 WL 533907, at * 3 ("whether an insurance company's investigatory documents were prepared in anticipation of litigation turns on the facts of each case"). To determine whether the insurance company was acting in anticipation of litigation, the party asserting the privilege must show that the "insurance company's activity shift[ed] from mere claims evaluation to a strong anticipation of litigation." *Atiyeh v. Liberty Mut. Ins. Co.*, No. 00-CV-2661, 2000 WL 1796420, at *1 (E.D.Pa. Nov. 15, 2000).

Entry number 22 is an email between Perry and Scafe at BTC discussing an upcoming call with its insurance carrier, XL Insurance, for the purpose of determining coverage and discussing a strategy to resolve the DOL investigation. Similarly, entry number 25 is an email from Perry to XL Insurance conveying its strategy for resolving the DOL investigation. Entry numbers 23 and 24 consist of an email exchange between an SRA representative and an XL Insurance representative discussing the potential for insurance coverage with respect to the DOL

15

investigation. These emails were subsequently forwarded to Perry, with instructions to review XL Insurance's assessment of the policy coverage with respect to the DOL investigation. Perry then forwarded the emails to Scafe to "discuss[] internally the insurer's participation in settlement and related information it would need regarding the insurer's contribution." Scafe Decl. at ¶ 20; P.L. at 22.

The Court concludes that entry numbers 22, 23, 24, and 25, were prepared in anticipation of litigation and are thus protected under the work product doctrine. "[F]ederal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer." *United Coal Cos.*, 839 F2d. at 966. Moreover, investigations by regulatory agencies provide reasonable grounds to anticipate litigation. *See e.g.*, *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1261 (3d Cir. 1993) (OSHA inquiry sufficient to anticipate litigation so that privilege protected defendant's consultant's report); *Martin v. Monfort, Inc.,* 150 F.R.D. 172, 173 (D. Colo. 1993) ("Investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine."); *Garrett v. Metropolitan Life Ins. Co.*, No. 95-CV-2406, 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996) ("Regulatory investigations by outside agencies present more than a mere possibility of future litigation . . . ."); *RR Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983) (holding that the defendant's correspondence with its insurers "written as a consequence of pending litigation for the purpose of mounting a defense to the claim" were trial preparation materials within the meaning of Rule 26(b)(3)).

BTC received a subpoena from the DOL and, at the behest of its attorney, contacted XL Insurance to discuss the defense of BTC in a government agency investigation. The Court concludes that the email communications, which discuss in detail the status of the investigation and the prospects of settlement, were prepared in anticipation of litigation that might grow out of the investigation. The communications are thus protected as attorney work product.

The Court further concludes that entry numbers 22, 23, 24, and 25, are protected by the attorney-client privilege under Pennsylvania law. The communications specifically relate to "claim assessment and/or strategy . . . of a claim or defense or respecting strategy or tactics," which facilitated BTC's ability to determine a legal strategy with respect to the DOL investigation. *Serrano*, 298 F.R.D. 271, at 283.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part plaintiffs' Motion to Compel.

An appropriate order follows.