IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DANSKO HOLDINGS, INC., | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| BENEFIT TRUST COMPANY, | NO. 16-324 |
| Defendant. | |

DuBois, J.                                                                                          November 8, 2019

## **M E M O R A N D U M**

### I.       INTRODCUTION

This case arose out of a contract dispute between Benefit Trust Company ("BTC") and Dansko Holdings, Inc. Dansko claimed, *inter alia*, that that BTC violated the terms of a Trust Agreement when it failed to provide trustee services for a debt refinancing transaction. Presently before the Court is Dansko's and BTC's motions for summary judgment. For the reasons that follow, BTC's motion is granted in part and denied in part. Dansko's motion is granted.

### II.     BACKGROUND

Dansko entered into a Trust Agreement with Reliance Trust Company in 2011, under which Reliance was named trustee for the Dansko Employee Stock Ownership Plan. Benefit Trust's Statement Uncontroverted Material Facts Supp. Mot. Summ. J. Ex. A [hereinafter Trust Agmt.]. In May 2014, Dansko sought to replace Reliance as trustee. Second Am. Compl. 19. BTC lobbied to be appointed trustee. Dansko's Add'l Statement Undisputed Material Facts Opp. Benefit Trust's Mot. Summ. J. ¶ 12 [hereinafter Dansko's UMF]. During the lobbying, BTC failed to disclose that it had been subject to a Department of Labor ("DOL") investigation. *Id.* at ¶¶ 13-15. Dansko appointed BTC as trustee on June 2, 2014. *Id.* at ¶ 33. BTC accepted the

appointment as trustee pursuant to the terms of the Trust Agreement on June 17, 2014.  *Id.* at ¶ 34.

After BTC accepted the appointment as trustee, the Dansko board of directors met three times from June 18, 2014 until December 9, 2014, at which times it discussed refinancing Dansko's debt obligations (the "Refinancing Transaction").  Dansko's UMF ¶¶ 36, 39, 46-48.  Howard Kaplan represented BTC at all three meetings.  *Id.*  At the first meeting, Mr. Kaplan told the Dansko board of directors that BTC would "be able to do the Refinancing Transaction."  *Id.* at ¶ 42.  Mr. Kaplan later informed the Dansko board of directors "that the [trustee] typically required 30-60 days to complete the due diligence regarding the terms on behalf of the [trust]."  *Id.* ¶ 49.  Mr. Kaplan also told a Dansko board member that "in his role as trustee he may need to have a conversation with [two individuals] concerning the terms of the Refinancing Transaction."  *Id.* at ¶ 45.

Despite Mr. Kaplan's statements, BTC was not obligated under the Trust Agreement to serve as trustee for the Refinancing Transaction.  Dansko's Resp. Benefit Trust's Statement Uncontroverted Material Facts ¶ 7 [hereinafter BTC's UMF].  Additionally, Dansko and BTC never discussed the terms or conditions by which BTC would serve as trustee for the Refinancing Transaction.  BTC's UMF ¶ 21.  On December 11, 2014, BTC informed Dansko that it would not serve as trustee for the Refinancing Transaction.  *Id.* ¶ 20.

On January 27, 2016, Dansko filed its initial Complaint.  On September 27, 2016, Dansko filed its Second Amended Complaint (Document No. 29) asserting breach of contract (Count I), breach of oral contract (Count II), promissory estoppel (Count III), and fraud in the inducement (Count IV).  Second Am Compl. ¶¶ 48-78.  On February 2, 2017, BTC filed its Answer to Plaintiff's Second Amended Complaint (Document No. 44).  In its Answer, BTC

counterclaimed for breach of contract, asserting that Dansko "breached the Trust Agreement by failing to reimburse [BTC] for any of the fees and expenses it has incurred in this lawsuit." Answer 16-20. In April 2018, both parties moved for summary judgment. BTC moved for summary judgment on the four counts in the Second Amended Complaint and its Second Amended Counterclaim for breach of contract. Dansko moved for summary judgment solely on BTC's Second Amended Counterclaim for breach of contract. The motions are fully briefed,[1] and are thus ripe for decision.

## III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[] and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party

---

[1] On April 11, 2018, BTC filed a Motion for Summary Judgment (Document No. 55). Dansko responded on March 5, 2019 (Document No. 75). BTC filed a reply on April 2, 2019 (Document No. 79). On April 27, 2018, Dansko filed a Motion for Summary Judgment (Document No. 60). BTC responded on March 5, 2019 (Document No. 74). Dansko filed a reply on April 2, 2019 (Document No. 82).

opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

As discussed *supra*, BTC moved for summary judgment on Dansko's claims for breach of contract (Count I), breach of oral contract (Count II), promissory estoppel (Count III), and fraud in the inducement (Count IV). BTC also moved for summary judgment on its counterclaim for indemnity. Dansko moved for summary judgment solely on BTC's counterclaim for indemnity. In order to resolve both parties' motions, the Court must first conduct a choice of law analysis because jurisdiction in this case is based on diversity of citizenship. Thereafter, the Court addresses BTC's motion for summary judgment on Dansko's claims before addressing BTC's and Dansko's motions for summary judgment on BTC's counterclaim for indemnity.

### A. Choice of Law

The Court must conduct a choice of law analysis to determine which state's substantive law governs the claims at issue because jurisdiction in the case is based on diversity between the parties. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); s*ee also Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017). In conducting a choice of law analysis, the Court is "required to apply the law of the forum state, including its choice of law provisions." *Woessner v. Air Liquide Inc.*, 242 F.3d 469, 472 (3d Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, the Court applies Pennsylvania choice of law rules.

The Trust Agreement contains a choice of law provision designating that the agreement is to be construed according to Georgia law. Trust Agmt § 9.11 ("This Agreement shall be

construed according to the laws of the State of Georgia, except to the extent superseded by ERISA or any other federal law."). "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) (quoting *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)). A choice of law provision will be enforced unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.*

BTC argues that the Court should not enforce the choice of law provision because Georgia has no connection to the parties or to the transaction. Def. Reply Supp. Mot. Summ. J. at 2 n.1. The Court agrees. Dansko is a citizen of Pennsylvania and BTC is a citizen of Kansas. Second Am. Compl. ¶11-12. None of the events that gave rise to this suit occurred in Georgia. *See generally* Dansko's UMF. Georgia law was selected by Dansko and Reliance, BTC's predecessor as trustee, because Reliance was a Georgia citizen when it entered into the original Trust Agreement with Dansko. BTC's Suggestions Opp. Dansko's Mot. Partial Summ. J. 8 n.4. However, the applicability of the choice of law provision must be evaluated based on Georgia's relationship to the current parties—Dansko and BTC—not Georgia's relationship to Dansko and Reliance. Georgia has no relationship, let alone a substantial relationship, to the parties or to the Trust Agreement and there is no other reasonable basis for the parties' choice. *Gay*, 511 F.3d at 389. Accordingly, the Court will not enforce the choice of law provision.

Because the Court will not enforce the choice of law provision, it must conduct a choice of law analysis to determine which state's substantive law governs the claims at issue. As

discussed *supra*, the Court applies Pennsylvania choice of law rules. Pennsylvania has a two-step framework for addressing choice of law questions. First, the "Court determines whether a real conflict exists between the respective laws" of the states with an interest in the case and second, the Court determines "which state 'has the greater interest in the application of its law.'" *Woods Servs., Inc. v. Disability Advocates, Inc.*, No. CV 18-296, 2018 WL 2134016, at *4 (E.D. Pa. May 9, 2018) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230-31 (3d Cir. 2007)). The parties identify Georgia and Pennsylvania as two states with a possible interest in this case. However, as discussed *supra*, Georgia has no connection with, or interest in, this case. Pennsylvania is the only state identified by the parties with an interest in the application of its law to the claims at issue. Accordingly, the Court applies Pennsylvania law to all the claims in this case.

### B. Breach of Contract (Count I)

In Count I, Dansko originally alleged that BTC breached the Trust Agreement and the implied duty of good faith and fair dealing when it refused to act as trustee for the Refinancing Transaction. Second Am Compl. ¶¶ 48-58. However, in its response to BTC's Motion for Summary Judgment, stated with respect to Count I, that it "only seeks to proceed on its claim for breach of the duty of good faith and fair dealing." Dansko's Opp. Benefit Trust's Mot. Summ. J. at 9. Accordingly, the Court will address in Count I only, Dansko's claim for breach of the implied duty of good faith and fair dealing. It will treat Dansko's claim for breach of the Trust Agreement as withdrawn.

Under Pennsylvania law, the implied duty of good faith and fair dealing is an "interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir.

6

2000). However, the implied duty of good faith and fair dealing does not provide an independent basis of liability.² *Scott v. PNC Bank, Nat'l Ass'n*, No. 18-3363, 2019 WL 3937594, at *4 (3d Cir. Aug. 20, 2019) ("Pennsylvania law does not recognize a distinct claim for breach of the duty of good faith and fair dealing."); *Landan v. Wal-Mart Real Estate Bus. Tr.*, 775 F. App'x 39, 42 (3d Cir. 2019) ("Pennsylvania does not allow an action for breach of the [implied duty] of good faith and fair dealing separate from a breach of contract claim."); *Hatchigian v. State Farm Ins. Co.*, No. CIV.A. 13-2880, 2014 WL 176585, at *7 (E.D. Pa. Jan. 16, 2014) ("In Pennsylvania, there is extensive authority holding that there is no separate cause of action for a breach of the implied covenant of good faith and fair dealing independent of a breach of contract claim."), *aff'd*, 574 F. App'x 103 (3d Cir. 2014).

Dansko withdrew its breach of contract claim. Dansko's Opp. Benefit Trust's Mot. Summ. J. at 9 ("Dansko only seeks to proceed on its claim for breach of the duty of good faith and fair dealing."). Dansko's claim for breach of the implied duty of good faith and fair dealing fails as a matter of law. *E.g. Scott*, 2019 WL 3937594, at *4. Thus, with respect to Count I, the Court grants BTC's Motion for Summary Judgment on Dansko's claim for breach of the implied duty of good faith and fair dealing and marks its claim for breach of contract as withdrawn with prejudice.

### C. Breach of Oral Contract (Count II)

Dansko alleges that BTC breached an oral contract to provide trustee services for the Refinancing Transaction in Count II. Second Am. Compl. ¶¶ 59-63. Dansko asserts that

---

² Georgia law is in accord. *See Ceasar v. Wells Fargo Bank, N.A.*, 744 S.E.2d 369, 374 (Ga. Ct. App. 2013) ("Because the Ceasars did not assert a breach of contract claim, their claim for breach of the implied covenant of good faith and fair dealing failed as a matter of law."); *Secured Realty Inv. v. Bank of N. Georgia*, 725 S.E.2d 336, 339 (Ga. Ct. App. 2012) ("[T]he [implied duty of good faith and fair dealing] cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.").

7

"through the words and actions of [Mr. Kaplan]—[BTC] agreed that it would act as the trustee for the Refinancing Transaction." Dansko's Opp. Benefit Trust's Mot. Summ. J. at 10. Dansko's breach of oral contract claim fails for three reasons: (1) Dansko did not meet its burden of proving that it entered into an enforceable oral contract with BTC for BTC to provide trustee services for the Refinancing Transaction; (2) oral trust agreements created after 2006 are unenforceable in Pennsylvania; and (3) agreements to agree are unenforceable in Pennsylvania.

First, Dansko failed to meet its burden of proving that it entered into an enforceable oral contract with BTC for BTC to provide trustee services for the Refinancing Transaction. "The burden of proving the existence of a contract lies with the party relying on its existence." *Guzzi v. Morano*, No. CIV.A. 10-1112, 2013 WL 4042511, at *10 (E.D. Pa. Aug. 8, 2013). An enforceable oral contract under Pennsylvania law has three elements: "(1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently definite terms, and (3) an agreement supported by adequate consideration." *Id.* Evidence supporting the existence of an "oral contract must be clear and precise." *Id.*; *see Feret v. First Union Corp.*, No. CIV. A. 97-6759, 1999 WL 80374, at *15 (E.D. Pa. Jan. 25, 1999).

The evidence that Dansko marshals in support of its claim for breach of an oral contract only shows that: (1) Mr. Kaplan represented BTC at three Dansko board meetings, where the Refinancing Transaction was discussed; (2) Mr. Kaplan told the Dansko board of directors that BTC would "be able to do the Refinancing Transaction" and "that the [trustee] typically required 30-60 days to complete the due diligence regarding the terms on behalf of the [trust]."; and (3) Mr. Kaplan told a Dansko board member that "in his role as trustee he may need to have a conversation with [two individuals] concerning the terms of the Refinancing Transaction." Dansko's UMF ¶¶ 42, 45. This evidence, viewed in the light most favorable to Dansko, is not

"clear and precise" evidence of an oral contract with "sufficiently definite terms." Further, Dansko admitted that it and BTC never discussed the terms or conditions by which BTC would serve as trustee for the Refinancing Transaction. BTC's UMF ¶ 21. The Court thus concludes, based on the undisputed evidence before it, that there was no oral contract for BTC to provide trustee services for the Refinancing Transaction.

Second, even if Dansko and BTC had entered into an oral contract for BTC to provide trustee services for the Refinancing Transaction in 2014, it would be unenforceable as a matter of law because oral trust agreements created after 2006 are unenforceable in Pennsylvania. 20 Pa. C.S.A. § 7737 (2006) ("Oral trusts are unenforceable in this Commonwealth."); 20 Pa. C.S.A. § 7732 (2006) ("A trust is created only if . . . the settlor signs a writing that indicates an intention to create the trust and contains provisions of the trust."); *Deaver v. Lemon*, No. 1244 MDA 2014, 2015 WL 7015713, at *4 (Pa. Super. Ct. June 1, 2015) ("[O]ral trusts created after November 6, 2006, are unenforceable in this Commonwealth.").

Finally, Dansko's statement that BTC agreed to act as a trustee for the Refinancing Transaction "even if that meant that a supplemental written agreement would have been required," describes an agreement to agree, which is unenforceable in Pennsylvania. *Moody v. Allegheny Valley Land Tr.*, 976 A.2d 484, 495 n.5 (Pa. 2009) ("It is well settled, however, that [] an 'agreement to agree' establishes no legally enforceable obligation."); *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 430 (E.D. Pa. 2019) ("[P]reliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract."). Accordingly, the Court grants BTC's Motion for Summary Judgment on Dansko's breach of oral contract claim (Count II).

### D. Promissory Estoppel (Count III)

Dansko asserts a claim for promissory estoppel in Count III. Second Am. Compl. ¶¶ 64-69. Under Pennsylvania law, "[p]romissory estoppel is an equitable remedy to be implemented only when there is no contract." *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995). Upon a "finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (affirming summary judgment); *see also Bennett v. Itochu Int'l, Inc.*, No. 09-CV-1819, 2012 WL 3627404, at *22 (E.D. Pa. Aug. 23, 2012) ("Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel."), *aff'd,* 572 F. App'x 80 (3d Cir. 2014). Dansko and BTC formed an enforceable contract on June 17, 2014 when BTC agreed to serve as trustee pursuant to the Trust Agreement. BTC's UMF ¶ 1. Dansko also admits that the "Trust Agreement was in effect at the time of the events on which Dansko's claim for promissory estoppel is based." BTC's UMF ¶ 22. Thus, Dansko's promissory estoppel claim in Count III fails as a matter of law and the Court grants BTC's Motion for Summary Judgment on that claim.

### E. Fraud in the Inducement (Count IV)

In Count IV, Dansko claims that BTC fraudulently induced it into entering the Trust Agreement by failing to disclose that BTC had been subject to a DOL investigation. Second Am. Compl. ¶¶ 70-78. BTC argues that it is entitled to summary judgment on Dansko's fraud in the inducement claim because, *inter alia*, the parol evidence rule bars Dansko's fraud in the inducement claim. BTC is correct.

In order to assert a fraud in the inducement claim, Dansko must prove, *inter alia*, "justifiable reliance on [BTC's misrepresentation]." *Freeman v. Pittsburgh Glass Works, LLC*,

709 F.3d 240, 257 (3d Cir. 2013). However, "due to the parol evidence rule's operation, a party cannot be said to have justifiably relied on prior representations that he has superseded and disclaimed through a fully integrated written contract." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) ("[B]y signing [the contract], which contained an integration clause . . . [plaintiffs] explicitly disclaimed reliance on any [prior] representations."). "Pennsylvania law prohibits recovery on a claim of fraud in the inducement" where a contract is fully integrated. *Goldstein v. Murland*, No. CIV.A. 02-247, 2002 WL 1371747, at *2 (E.D. Pa. June 24, 2002). Whether a contract is fully integrated is a question of law. *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals Co.*, No. CIV.A. 95-4034, 1996 WL 377106, at *3 (E.D. Pa. June 26, 1996). The Court concludes that Trust Agreement is fully integrated.[3]

Dansko nonetheless argues that the parol evidence rule does not prohibit it from relying on BTC misrepresentations from May 2014 because the Trust Agreement's integration clause became effective on December 11, 2011 when it entered into the Trust Agreement with Reliance, BTC's predecessor. The Court rejects this argument. The trust agreement between Dansko and Reliance is a separate contract that took effect in December 2011. Trust Agmt. § 9.12. The contract at issue—the Trust Agreement between Dansko and BTC, which includes the integration provision at issue, took effect on June 17, 2014 when BTC accepted the Dansko board's appointment as trustee. Dansko's UMF ¶¶ 33-34; BTC's UMF ¶¶ 1, 22. Thus, the parol

---

[3] An "integration clause" is a clear sign that a writing constitutes the entire agreement. *Yocca*, 854 A.2d at 436. The Trust Agreement contains an integration clause: "This Agreement constitutes the entire Agreement between the parties hereto with regard to the subject matter hereof, and there are no other agreements or understandings between the parties relating to the subject matter hereof other than those set forth or provided herein." Trust Agmt. § 9.4. Additionally, an integration clause makes the "parol evidence rule particularly applicable." *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 665 (Pa. 1995).

11

evidence rule bars Dansko's fraud in the inducement claim and BTC is entitled to summary judgment on this claim (Count IV).[4]

**F. Indemnification**

BTC seeks summary judgment on its Second Amended Counterclaim for breach of contract. Dansko also seeks summary judgment on BTC's Second Amended Counterclaim for breach of contract. In its Second Amended Counterclaim, BTC argues that Dansko "breached the Trust Agreement by failing to reimburse [BTC] for any of the fees and expenses it has incurred in this lawsuit." Answer 16-20. Whether Dansko breached the Trust Agreement turns on whether it was obligated, under the indemnity provision in the Trust Agreement, to indemnify BTC for BTC's fees and expenses incurred in defense of Dansko's lawsuit against BTC.[5]

---

[4] Because the Court concludes that the parol evidence rule bars Dansko's fraud in the inducement claim, it need not reach BTC's remaining arguments.

[5] The indemnity provision in Section 9.9 of the Trust Agreement states:

> Recognizing that engagements of the type contemplated in this agreement can result in government investigations, litigation, or other proceedings, [Dansko] agrees to indemnify [BTC] and its directors, employees and officers against and from any and all claims, damages, expenses, liabilities and losses whatsoever (including, but not limited to, any and all expenses reasonably incurred in investigating, preparing for, defending, or responding to discovery requests or other requests for information relating to, any government investigations, litigation, arbitration or other proceedings, commenced or threatened, or any claim whatsoever, whether or not resulting in any liability), to which any or all of them may become subject under any applicable federal or state law or otherwise relating to [BTC]'s duties as Trustee (including all events that occurred prior to [BTC] becoming the Trustee or after [BTC]'s service as Trustee has terminated). However, the indemnification of [BTC] shall not apply to any claim, damage, expense, liability or loss that is found by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from a breach by [BTC] of its fiduciary duties under Title I of ERISA or, in non-fiduciary matters, from the bad faith, gross negligence, willful misconduct or material breach of the terms of this Agreement by [BTC] (a "Non-Indemnity Loss").
>
> If [BTC] receives notice of any government agency action or any other legal proceeding or arbitration with respect to which indemnification may be sought from [Dansko] pursuant to this Section 9.9 (a "Proceeding"), [BTC] shall notify [Dansko] of the Proceeding in writing within 30 days of its receipt of notice of the Proceeding. However, the failure by [BTC] to so notify [Dansko] shall not relieve [Dansko] from any liability for indemnification under this Section 9.9 except to the extent that the failure to notify the Company shall actually have prejudiced [Dansko]'s defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to [BTC] or to otherwise participate in the Proceeding. If [Dansko] elects to assume the defense of the Proceeding, it then shall pay all costs of defense.
>
> [BTC] shall have the right to employ its own counsel in any Proceeding if any one or more of

Dansko and BTC disagree on whether, under Pennsylvania law, an indemnity provision can apply to first-party indemnity claims—BTC says it does, Dansko says it does not. A first-party-indemnity claim is a claim for indemnification by one contractual party against the other, in a suit between the parties. To obtain such indemnity from an adverse party under Pennsylvania law, there must be a "clear agreement of the parties." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009); *see also Horizon Unlimited, Inc., John Hare v. Richard Silva, SNA, Inc*, No. CIV. A. 97-7430, 1998 WL 476191, at *2 (E.D. Pa. Aug. 12, 1998).

In Pennsylvania, "[t]he construction of an indemnity contract is a question of law for the court to decide." *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). It is a "well-established principle . . . that an indemnity clause is to be construed against the party seeking indemnification." *See Jacobs Constructors, Inc.*, 264 F.3d at 371. "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). Moreover, "all provisions in the agreement will be construed together and each will be given effect because a court will not interpret one provision . . . in a manner which results in

---

the following conditions are satisfied:

(a) [Dansko] authorizes the employment by [BTC] of its own legal counsel;

(b) Legal counsel to [BTC] advises [BTC] that there may be one or more legal defenses available to [BTC] that are in addition to or different from defenses available to the Company and counsel for [Dansko] declines to assert such defenses (in which case [Dansko] shall not have the right to assume the defense of the Proceeding on behalf of [BTC]); or

(c) Legal counsel to [BTC] shall inform [BTC] that a potential conflict of interest exists between [Dansko] and [BTC].

[BTC] shall not be required to disclose or otherwise share its counsel's advice in order to satisfy either sub-paragraph (b) or (c), above.

another portion being annulled." *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (quoting *Lesko v. Frankford Hosp.–Bucks County*, 15 A.3d 337, 342 (Pa. 2011). "If [an] indemnity clause is clear and unambiguous, then the intentions of the parties should be ascertained primarily by looking to the language used in the agreement." *Jacobs Constructors, Inc.*, 264 F.3d at 371. "Only where the court finds ambiguity may it consider the circumstances under which the contract was signed." *Id.* "The mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous." *Id.*

The indemnity provision at issue, Section 9.9 of the Trust Agreement, provides as follows: "[r]ecognizing that engagements of the type contemplated in this agreement can result in government investigations, litigation, or other proceedings, [Dansko] agrees to indemnify [BTC] and its directors, employees and officers against and from any and all claims, damages, expenses, liabilities and losses whatsoever (including, but not limited to, any and all expenses reasonably incurred in investigating, preparing for, defending, or responding to discovery requests or other requests for information relating to, any government investigations, litigation, arbitration or other proceedings, commenced or threatened, or any claim whatsoever, whether or not resulting in any liability), to which any or all of them may become subject under any applicable federal or state law or otherwise relating to [BTC]'s duties as Trustee." Read in context, that language does not cover Dansko's suit against BTC.

BTC argues that the "operative language" of the indemnity provision which states that "[Dansko] agrees to indemnify [BTC] . . . against and from any and all claims . . . whatsoever . . . to which [BTC] may become subject under any applicable federal or state law or otherwise relating to [BTC]'s duties as Trustee" encompasses Dansko's lawsuit against BTC. BTC's

14

Suggestions Opp. Dansko's Mot. Partial Summ. J. 9-11.  The Court must read this sentence in context—the entire indemnity provision must be considered.  *See Pac. Employers Ins. Co.*, 693 F.3d at 426.

A common sense reading of the entire indemnity provision makes clear that it was intended to only cover third-party claims.  A third-party claim is a claim by a third party to the contract has against the indemnitee.  Several sections of the indemnity provision would lead to absurd results if the Court agreed with BTC and concluded that the indemnity provision applies to first-party claims.  First, the indemnity provision contains a notice provision that requires BTC to give Dansko notice of any indemnity claims—"[i]f [BTC] receives notice of any government agency action or any other legal proceeding or arbitration with respect to which indemnification may be sought from [Dansko] pursuant to this Section 9.9 (a "Proceeding"), [BTC] shall notify [Dansko] of the Proceeding in writing within 30 days."  Trust Agmt. §9.9.  Under BTC's interpretation, BTC would be required to notify Dansko within 30 days of Dansko's lawsuit against BTC.  Second, the indemnity provision gives Dansko the right to "assume the defense of the Proceeding with counsel reasonably satisfactory to [BTC] or to otherwise participate in the Proceeding."  Trust Agmt. §9.9.  This language cannot apply to Dansko's lawsuit against BTC.  It would be absurd to give Dansko the right to assume BTC's defense against itself.  Third, the indemnity provision states that "[BTC] shall have the right to employ its own counsel in any Proceeding."  Trust Agmt. §9.9.  That provision would make no sense in the context of a first-party claim in which BTC, as a party, would already have an attorney.

The sections of the indemnity provision requiring notice, Dansko's right to assume BTC's defense, and BTC's right to employ its own counsel clearly show that the parties intended that the indemnity provision to only apply to third-party claims.  When the "operative language"

15

of the indemnity provision is construed together with these other sections and construed against BTC, the Court concludes that the parties obviously intended that the indemnity provision covers only third-party claims.[6] *See Jacobs Constructors, Inc.*, 264 F.3d at 371.

BTC also argues that Section 9.10 of the Trust Agreement requires Dansko to reimburse BTC for fees and expenses incurred in defending this lawsuit. BTC's Suggestions Opp. Dansko's Mot. Partial Summ. J. 3 (quoting Trust Agmt. § 9.10). Section 9.10, in relevant part, states: "[Dansko], regardless of the type or nature of any claims asserted against [BTC]. . . shall reimburse [BTC] for all reasonably incurred expenses and fees as and when [BTC] incurs them in connection with any Proceeding." Trust Agmt. § 9.10. This argument is rejected. Section 9.10 is limited by the definition of "Proceeding" in Section 9.9. A "Proceeding" is defined in Section 9.9 of the Trust Agreement as, "any government agency action or any other legal proceeding or arbitration with respect to which indemnification may be sought from [Dansko] pursuant to this Section 9.9." BTC's UMF ¶ 26. The definition of "Proceeding" makes clear that Section 9.10 is coextensive with Section 9.9 and does not expand Dansko's indemnity obligation beyond what is set forth in Section 9.9. Section 9.9 does not require Dansko to indemnify BTC because, as the Court has ruled *supra*, Section 9.9 covers only third-party claims.

Because the Court concludes that Dansko was not obligated to indemnify BTC for fees and expenses incurred in this lawsuit, Dansko did not breach the Trust Agreement. Thus, BTC's Motion for Summary Judgment on its Second Amended Counterclaim for breach of contract seeking indemnity from Dansko is denied. Dansko's Motion for Summary Judgment on BTC's

---

[6] None of the cases cited by BTC in support of its argument that "indemnity provisions are not limited to third party claims unless the parties expressly impose that limitation" acknowledge the court's obligation to construe indemnity provisions against the party seeking indemnity. *See* BTC's Suggestions Opp. Dansko's Mot. Partial Summ. J. 9-11.

Second Amended Counterclaim for breach of contract seeking indemnity from Dansko is granted.[7]

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion for Summary Judgment. Defendant's motion is granted with respect to plaintiff's claims for breach of the implied duty of good faith and fair dealing (Count I), breach of oral contract (Count II), promissory estoppel (Count III), and fraud in the inducement (Count IV). Plaintiff's breach of contract claim (Count I) is marked withdrawn with prejudice. Defendant's Motion for Summary Judgment on its Second Amended Counterclaim for breach of contract is denied. Plaintiff's Motion for Summary Judgment on defendant's Second Amended Counterclaim for breach of contract is granted. There are no claims remaining in the case.

An appropriate order follows.

---

[7] BTC's alternative argument that Dansko is a *de facto* third party to the Trust Agreement because it lacks standing to assert a claim for breach of the Trust Agreement under Pennsylvania law and that ERISA preempts Dansko's claims is meritless. BTC's Suggestions Opp. Dansko's Mot. Partial Summ. J. 15-16. The Trust Agreement created an enforceable contract between the parties. *See* Section IV(D). Thus, Dansko is a first party to the Trust Agreement, not a "*de facto*" third party.